IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

Brunswick Division

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Brunswick, Georgia
*By cking at 3:07 pm, Oct 05, 2015*

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 CASE |
| | ) | NUMBER 02-21669 |
| DURANGO GEORGIA PAPER COMPANY, | ) | |
| DURANGO GEORGIA CONVERTING | ) | |
| CORPORATION, and DURANGO GEORGIA | ) | JOINTLY ADMINISTERED |
| CONVERTING LLC | ) | |
| | ) | |
|     Debtors | ) | |
| | ) | |
| DURANGO GEORGIA PAPER COMPANY, | ) | ADVERSARY PROCEEDING |
| DURANGO GEORGIA CONVERTING | ) | NUMBER 15-02009 |
| CORPORATION, and DURANGO GEORGIA | ) | |
| CONVERTING LLC | ) | |
| | ) | |
|     Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PENSION BENEFIT GUARANTY | ) | |
| CORPORATION | ) | |
| | ) | |
|     Defendant | ) | |

## OPINION AND ORDER OF DISMISSAL WITH PREJUDICE

Pursuant to notice, hearing was held on the Motion to Dismiss ("Motion") by Defendant Pension Benefit Guaranty Corporation, with response in opposition by Plaintiffs/Debtors Durango Georgia Paper Company, Durango Georgia Converting Corporation, and Durango Georgia Converting LLC, acting by and through their Liquidating Trustee, National CRS LLC. For the

reasons that follow, the Motion is granted, and the Complaint for Equitable Subordination of Claim is dismissed with prejudice.

## BACKGROUND

The Pension Benefit Guaranty Corporation ("PBGC") is a corporation within the Department of Labor, 29 U.S.C. § 1302(a), that administers the federal government's insurance program for private pension plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), including pension plan terminations under 29 U.S.C. §§ 1301-1461. Here, the PBGC has two disputed claims pending in the underlying bankruptcy case: Claim No. 1576 and Claim No. 1581.

The claims are based on debts related to the defined benefit pension plan ("Pension Plan") created by the original owner of a paper mill in St. Marys, Georgia ("Mill") in 1965. As a result of a stock sale in December 1999, the Debtors acquired the Mill and became jointly and severally liable under 29 U.S.C. § 1307(e)(2) for the PBGC pension insurance premiums. This liability is the basis of Claim No. 1576.[1]

By the time the Debtors' jointly administered bankruptcy cases were filed in 2002, the Mill had ceased operations. But the Pension Plan did not terminate until March 1,

---

[1] The amount and priority of Claim No. 1576 are in dispute. (Compl. ¶ 31.)

2

2004.[2] As of that date, the Debtors became jointly and severally liable for the total amount of unfunded benefit liabilities under 29 U.S.C. § 1362(b) ("Termination Liability"), amounting to possibly as much as $55 million (Compl. ¶ 32). This liability is the basis of Claim No. 1581.[3]

### THE COMPLAINT

This adversary proceeding seeks equitable subordination of the PBGC's claim for the Termination Liability under 11 U.S.C. § 510(c), asserting that the PBGC not only had every opportunity but also was requested numerous times to intervene in the Liquidating Trustee's nearly eleven-year adversary proceeding seeking to recover the amount of the Termination Liability from the Mill's previous owners ("Pension Defendants").[4]

In that adversary proceeding, the Liquidating Trustee alleged, among other counts, that the Pension Defendants sold the Mill primarily to avoid the Termination Liability, thereby

---

[2] The termination date was established by agreement between the PBGC and Durango Georgia Paper Company as Pension Plan administrator, by and through the Liquidating Trustee. See Pension Benefit Guaranty Corporation v. Durango Georgia Paper Company, No. 2:05-CV-00153 (S.D. Ga. Dec. 20, 2006).

[3] Claim No. 1581 is a general unsecured claim, with only the amount in dispute. (Compl. ¶ 32.)

[4] See Durango-Georgia Paper Company v. H.G. Estate LLC (In re Durango Georgia Paper Company), Ch. 11 Case No. 02-21669, Adv. No. 04-02275 (Bankr. S.D. Ga. Feb. 4, 2015).

3

violating ERISA, 29 U.S.C. §§ 1362, 1369. Had the Liquidating Trustee prevailed on the ERISA count ("Pension-Related Claim"), any money recovered would have offset the more-than-50% dilution in distributions to all general unsecured creditors, including the PBGC, if the PBGC's claim for the Termination Liability is allowed as a general unsecured claim. (See Compl. ¶ 66.)

But the Liquidating Trustee did not prevail. The Eleventh Circuit Court of Appeals affirmed the dismissal of the Pension-Related Claim, holding that it failed to state a claim because it was brought for the benefit of the unsecured creditors in the bankruptcy cases, not for the benefit of the PBGC. Durango-Georgia Paper Co. v. H.G. Estate LLC, 739 F.3d 1263, 1273 (11th Cir. 2014).[5]

In its opinion, the Eleventh Circuit noted that the PBGC itself could have sued the Pension Defendants for the Termination Liability, but "declined to do so." Id. at 1272. That opportunity is now permanently foreclosed, the six-year statute of limitations having run. Id. at 1272 n.24.

The dismissal of the Pension-Related Claim had a collateral consequence as well: the stipulated dismissal of a second adversary proceeding the Liquidating Trustee had filed in 2009 to ensure the Pension Defendants' ability to satisfy the

---

[5] One year later, the parties stipulated to dismissal of the remaining counts of the adversary proceeding. See Adv. No. 04-02275, ECF No. 163.

4

anticipated judgment under ERISA.[6] That second lawsuit sought to avoid the Pension Defendants' transfer of a $200 million photography collection to the Metropolitan Museum of Art in New York, alleging that the transfer was made while the Pension-Related Claim was pending. The Eleventh Circuit's ruling that the Liquidating Trustee had no standing to pursue the Pension-Related Claim destroyed the legal basis of the fraudulent transfer claim; hence, the stipulated dismissal.

The Liquidating Trustee now alleges that the PBGC's refusal to either intervene or bring its own action under ERISA against the Pension Defendants was inequitable conduct that injured the remaining unsecured creditors, requiring equitable subordination of the PBGC's claim for the Termination Liability. Alternatively, the Liquidating Trustee argues that even if the PBGC's refusal to either intervene or bring its own action was not inequitable conduct, the resulting injury to the unsecured creditors alone is a sufficient ground for equitable subordination of the claim.

---

[6] See Durango Georgia Paper Company v. The Howard Gilman Foundation, Inc. (In re Durango Georgia Paper Company), Ch. 11 Case No. 02-21669, Adv. No. 09-02014 (Bankr. S.D. Ga. Feb. 4, 2015).

AO 72A
(Rev. 8/82)

## THE MOTION TO DISMISS

### I. The Standard Under Rule 12(b)(6).

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).[7] To survive a motion under Rule 12(b)(6), the complaint must state a claim that is facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). This standard "does not impose a probability requirement at the pleading stage, it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). When the questions at issue are purely legal, "there is no inherent barrier to reaching the merits at the 12(b)(6) stage." Marshall Cty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

The court "construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged in the complaint as true." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). Although the court makes reasonable inferences in the plaintiff's favor, it is not required to draw the plaintiff's inferences or to accept the plaintiff's legal conclusions. Id. "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule

---

[7] Rule 12(b)(6) of the Federal Rules of Civil Procedure is made applicable in bankruptcy by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

AO 72A
(Rev. 8/82)

12(b)(6) dismissal." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003). Ultimately, the court must draw on its judicial experience and common sense, reading the complaint as a whole, not parsing it piece by piece. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

## II. The Complaint Fails to State a Claim.

All the pleaded facts accepted as true, resolution of the Motion to Dismiss turns on three questions of law: first, whether the PBGC's claim may be equitably subordinated in the absence of inequitable conduct by the PGBC; second, whether the PBGC is an "insider" for the purpose of establishing inequitable conduct;[8] and third, whether it was inequitable for the PBGC not to either intervene in the Liquidating Trustee's lawsuit[9] or to bring its own lawsuit against the Pension Defendants.

---

[8] In this Circuit, whether a party is an insider is a mixed question of law and fact. Miami Police Relief & Pension Fund v. Tabas (In re The Florida Fund of Coral Gables, Ltd.), 114 F. App'x 72, 74 (11th Cir. 2005). Here, all facts in the Complaint having been accepted as true, only the question of law remains.

[9] The Liquidating Trustee does not explain how the PBGC could have recovered as an intervenor since, as the Eleventh Circuit found, the Pension-Related Claim was not brought for the benefit of the PBGC. See Durango-Georgia Paper Co. v. H.G. Estate, LLC, 739 F.3d 1263, 1273 n.25 (11th Cir. 2014).

If the PBGC could not have recovered as an intervenor, its failure to intervene could not possibly have been inequitable conduct. But I need not inquire into the Liquidating Trustee's theory on the PBGC's intervention at this juncture, because the Complaint before me also alleges that the PBGC's failure to file its own lawsuit was inequitable (Compl. ¶ 75, ECF No. 1). Analysis of the PBGC's conduct is thus required regardless of whether the PBGC could have recovered in the Liquidating Trustee's action.

7

The answer to each of these questions is no: The PBGC's claim may not be equitably subordinated in the absence of inequitable conduct; the PBGC is not an insider; and the PBGC's decision not to either intervene or to file its own action was not inequitable. The Complaint thus fails to state a claim.

But even without these fatal defects, the Complaint still would fail. What the Liquidating Trustee has not shown—and under the circumstances, cannot show—is a causal connection between the PBGC's decision not to pursue an action against the Pension Defendants and the alleged injury to the other unsecured creditors.

### A. The PBGC's Claim May Not Be Equitably Subordinated in the Absence of Inequitable Conduct.

The bankruptcy court has the power "under principles of equitable subordination [to] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." 11 U.S.C. § 510(c)(1). The phrase "under principles of equitable subordination" indicates congressional intent "at least to start with" the principles of equitable subordination as judicially developed over the decades before the Bankruptcy Code was enacted in 1978. United States v. Noland, 517 U.S. 535, 539 (1996); see also Merrimac Paper Co. v. Harrison (In re Merrimac Paper Co.), 420 F.3d 53, 59 (1st Cir. 2005) ("[T]he Supreme Court has made clear that in administering [§ 510(c)], the

starting point should be the compendium of judge-made principles of equitable subordination that existed prior to 1978 . . . .").

Those judge-made principles include the requirement of the claimant's inequitable conduct, as set out nearly forty years ago by the Fifth Circuit Court of Appeals in Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692 (5th Cir. 1977). Described by the United States Supreme Court as "influential," 517 U.S. at 538, the Mobile Steel test continues to be applied by "the vast majority" of courts, Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.), 379 B.R. 425, 433 (S.D.N.Y. 2007). Further, it is mandatory authority in the Eleventh Circuit.[10]

> The Mobile Steel test has three prongs:
>
> (i) The claimant must have engaged in some type of inequitable conduct.
>
> (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.
>
> (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

In re Mobile Steel, 563 F.2d at 699-700 (citations omitted).

The Liquidating Trustee argues that the circumstances here justify equitable subordination of the PBGC's claim without

---

[10] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

the misconduct required under the first prong of the <u>Mobile Steel</u> test. In support, the Liquidating Trustee cites <u>In re Friedman's, Inc.</u>, 356 B.R. 766 (Bankr. S.D. Ga. 2006) (Davis, J.), as well as five cases from other jurisdictions. (<u>See</u> Pl.'s Resp. in Opp'n 11-13, ECF No. 16.) None of these cases support the Liquidating Trustee's position.

The issue in all five of the cases from other jurisdictions was whether late-filed tax claims would be subordinated to timely filed unsecured claims. See <u>IRS v. Roberts (In re Larry Merritt Co.)</u>, 169 B.R. 141 (E.D. Tenn. 1994); <u>Crawford v. Green (In re Crawford)</u>, 135 B.R. 128 (D. Kan. 1991); <u>In re Cole</u>, 172 B.R. 287 (Bankr. W.D. Mo. 1994); <u>In re Elec. Mgmt., Inc.</u>, 133 B.R. 90 (Bankr. N.D. Ohio 1991); <u>In re Kragness</u>, 82 B.R. 553 (Bankr. D. Or. 1988). These cases were decided under a previous version of the Bankruptcy Code that did not distinguish between timely filed and tardily filed tax claims in the chapter 7 distribution scheme. <u>Compare</u> <u>In re Kragness</u>, 82 B.R. at 556 (quoting previous version of 11 U.S.C. § 726(a)(1)) <u>with</u> 11 U.S.C. § 726(a)(1); <u>see also</u> <u>In re Carpenter</u>, No. 6:05-bk-03334, 2009 WL 5214960, at *4 n.5 (Bankr. M.D. Fla. Dec. 28, 2009) (noting that previous § 726(a)(1) made no distinction between timely and late claims).

These cases are inapposite. Unlike in the matter here, the question before the court in each of these cases was the

10

congressional intent behind a discrete statutory subsection: "Congress must have intended Section 726(a)(1) to implicitly require a timely filing of priority claims in order to be endued with first priority distribution." In re Kragness, 82 B.R. at 557.

Only one of the cases applied § 510(c)(1) and the Mobile Steel test. See In re Cole, 172 B.R. at 291. In direct contradiction to the Liquidating Trustee's argument that inequitable conduct is not required under § 510(c)(1), the court in Cole specifically found inequitable conduct. See id. ("[T]he court finds the conduct is inequitable under the special circumstances of this case . . . .").

Finally, dispelling any doubt that these decisions are irrelevant here, the Eleventh Circuit Court of Appeals ruled on the same subsection under the previous Code and held that untimely tax claims would not be subordinated. See IRS v. Davis (In re Davis), 81 F.3d 134 (11th Cir. 1996) (holding that untimely filing did not affect priority payment of IRS claim).

Reliance on Friedman's is also misplaced. There, the claim at issue was the penalty portion of a consumer fraud class action lawsuit. 356 B.R. at 777. The claimant argued that the claim could not be equitably subordinated because the class action plaintiffs had not acted inequitably. Id. at 770. Instead of applying the Mobile Steel test, Judge Davis determined that the

11

claim should be equitably subordinated under the totality of the circumstances test. Id. at 775.

The Liquidating Trustee reads Friedman's to say that "the requirement of inequitable conduct may not be mandatory where equity demands claim subordination." (Pl.'s Resp. in Opp'n 12, ECF No. 16.) But Friedman's is more narrowly drawn than the Liquidating Trustee suggests. Friedman's recognized a single exception to Mobile Steel's requirement of inequitable conduct: penalty/punitive claims.

Distinguishing penalty/punitive claims from compensatory claims, Judge Davis considered that bankruptcy courts traditionally have not favored penalty/punitive claims, 356 B.R. at 771, and that such claims continue to be "treated as suspect," id. at 775. He noted that in Mobile Steel and subsequent cases in the Eleventh Circuit, the claim at issue was compensatory, so it was "unclear" whether creditor misconduct was required for subordination of penalty/punitive claims. Id. at 774. Judge Davis cited with approval the Seventh Circuit's view that "case-by-case administration of the Code's authority for equitable subordination is the right way to deal with all punitive financial claims." Id. at 775 (quoting In re A.G Fin. Serv. Ctr., Inc., 395 F.3d 410, 414 (7th Cir. 2005)). In adopting the case-by-case approach, Judge Davis limited its application: "**In the context of penalty/punitive claims**, Mobile Steel's three-prong test should not be applied

12

inflexibly but rather as a non-exclusive list of factors that may be considered." Id. at 776-77 (emphasis added).

Here, the challenged claim is based on "[s]tatutory liability under 29 U.S.C. §§ 1362, 1368 for unfunded [pension] benefit liabilities." (Case No. 02-21669, Claims Register, POC No. 1581.) The claim is thus compensatory, not punitive.[11]

I decline to extend Friedman's to a compensatory claim. Equitable subordination is an "extraordinary remedy." Holt v. FDIC (In re CTS Truss, Inc.), 868 F.2d 146, 148 (5th Cir. 1989). Where, as here, the case "involves actual loss claims by all parties," a finding of inequitable conduct is required for equitable subordination of the challenged claim. See First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs, Inc.), 974 F.2d 712, 719 (6th Cir. 1992) (rejecting Trustee's argument that "the new test is a standard of overall fairness to be applied on a case-by-case basis, which would allow equitable subordination even in circumstances where no 'gross misconduct' has occurred").

The Liquidating Trustee is thus incorrect that the alleged injury to the unsecured creditors is alone a sufficient ground for equitable subordination of the PBGC's claim. It must be shown that the PBGC's conduct was inequitable.

---

[11] The PBGC initially asserted priority for the claim in part as "[t]axes or penalties owed to governmental units [under] 11 U.S.C. § 507(a)(8)." (POC No. 1581.) However, the PBGC no longer asserts the claim's priority. (See Compl. ¶ 32, ECF No. 1.) Thus, to whatever extent the claim could have been considered a penalty/punitive claim as initially filed, there is no basis for that identity now.

AO 72A

(Rev. 8/82)

## B. The PBGC Is Not an Insider.

"Inequitable conduct has been regarded as a wrong or unfairness or, 'at the very least, a masquerade of something for what it is not.'" Jacoway v. IRS (In re Graycarr, Inc.), 330 B.R. 741, 749 (Bankr. W.D. Ark. 2005) (citing In re Lifschultz Fast Freight, 132 F.3d 399, 344 (7th Cir. 1997)).

The legal standard for inequitable conduct under the first prong of the Mobile Steel test depends on whether the claimant is an insider or a non-insider. Estes v. N&D Props., Inc. (In re N&D Props., Inc.), 799 F.2d 726, 731 (11th Cir. 1986). The standard of misconduct is lower for an insider claimant than a non-insider claimant. Equitable subordination of an insider's claim requires conduct that is only "unfair." Id.

The term "insider" is defined under the Bankruptcy Code. For corporate debtors, insiders include the following individuals and entities:

    (i)     director of the debtor;

    (ii)    officer of the debtor;

    (iii)   person in control of the debtor;

    (iv)   partnership in which the debtor is a general partner;

    (v)    general partner of the debtor; or

    (vi)   relative of a general partner, director, officer, or person in control of the debtor
             . . . .

AO 72A

(Rev. 8/82)

11 U.S.C. § 101(31)(B)(i)-(vi).

Here, the Liquidating Trustee argues that if misconduct is required, the insider standard should apply, because the PBGC was a "person in control of the debtor" based on the PBGC's control of the Pension Plan:

> [The PBGC] simply displaced [the Debtor's] management and the [Pension] Plan administrators when they assumed the obligations of the Plan. And not only did they have the power to control the Plan, in fact they did control it. In fact, [the PBGC] overruled the decision of management to pursue these claims [for the Termination Liability]. So there's no question that they became in control of the Plan and they supplemented the Debtor. . . . **We want to argue and develop that by being able to take over this segment of the company, they basically essentially became in the position of one in control of that portion of the Debtor** and therefore are subject to scrutiny as an insider for purposes of equitable subordination."

(Oral Argument at 11:12:32-42, Aug. 13, 2015 (emphasis added).)

But the Pension Plan was not a "segment of the company" or a "portion of the Debtor." The Pension Plan was a separate and distinct legal entity. See 29 U.S.C. § 1132(d)(1) ("An employee benefit plan may sue or be sued under this subchapter as an entity."); see also Wildbur v. Arco Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992) ("An ERISA plan is a separate legal entity from its sponsor . . . ."); Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Tr., 191 F. Supp. 2d 223, 233 (D. Mass.

AO 72A
(Rev. 8/82)

2002) (same); Allard v. Coenen (In re Trans-Indus., Inc.), 419 B.R. 21, 29 (Bankr. E.D. Mich. 2009) (ERISA plan was a separate and distinct entity from the debtor that sponsored and administered the plan; McMullen Oil Co. v. Crysen Ref., Inc. (In re McMullen Oil Co.), 251 B.R. 558, 556 (Bankr. C.D. Cal. 2000) ("[A] pension plan is a separate legal entity, and this pension plan was not in bankruptcy."). The PBGC's control of the Pension Plan thus was not "control of the debtor," and the insider standard of misconduct for equitable subordination does not apply.

### C. The PBGC's Exercise of Its Statutory Discretion Was Not Inequitable.

The proper standard under which to evaluate the PBGC's conduct is the more stringent non-insider standard—if the PBGC's conduct may be evaluated at all. Under the permissive language of 29 U.S.C. § 1303(e)(1), the PBGC has the discretion to either pursue or not pursue civil actions, as the Complaint itself avers (Compl. ¶ 72, ECF No. 1). The PBGC argues that these enforcement decisions are presumptively unreviewable by the courts. (Mot. to Dismiss 9-14, ECF No. 10 (citing Heckler v. Chaney, 470 U.S. 821 (1985); Paulsen v. CNF Inc., 559 F.3d 1061 (9th Cir. 2009)). I need not reach that question, however, holding instead that if the PBGC's exercise of its statutory discretion is reviewable, the PBGC's decision not to either intervene or to pursue its own civil action was not inequitable.

16

A non-insider claim will not be equitably subordinated unless the movant shows "egregious conduct such as fraud, spoliation or overreaching." See N&D Props., Inc., 799 F.2d 726, 731 (11th Cir. 1986); see also Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.), 554 F.3d 382, 412 (3d Cir. 2009) (same); First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.), 974 F.2d 712, 718 (requiring "gross misconduct tantamount to 'fraud, overreaching or spoliation to the detriment of others'"); Riley v. Tencara, LLC (In re Wolverine, Proctor & Schwartz, LLC), 447 B.R. 1, 33 (Bankr. D. Mass. 2011) (requiring "[v]ery substantial misconduct involving moral turpitude or some breach or some misrepresentation where other creditors were deceived to their damage . . . or gross misconduct amounting to overreaching").

The conduct alleged against the PBGC does not merely fall short of the non-insider standard; it is not even misconduct. The essence of the Complaint is that the PBGC decided not to either intervene in the Liquidating Trustee's lawsuit or bring its own lawsuit in spite of knowing full well that this decision would result in a drastic decrease in the amount of assets available for distribution to the general unsecured creditor class. The Liquidating Trustee thus implies that the PBGC breached some duty it owed to the other creditors. See Official Comm. Of Unsecured Creditors v. Morgan Stanley & Co. (In

17

re Sunbeam Corp.), 284 B.R. 355, 364 (Bankr. S.D.N.Y. 2002) ("[T]o defeat a motion to dismiss, the facts must allege that the claimant committed fraud or some other illegal action, or that the claimant **breached some legal duty that it owed to the debtor or its creditors.**" (emphasis added)).

But as a non-insider creditor, the PBGC owed no such duty, whether to the Debtors or to the other creditors. And without other allegations of wrongdoing, it is not misconduct for a creditor to act in its own interest to the detriment of other creditors. See id. ("[A]bsent receipt of a preference or fraudulent transfer, a creditor may ordinarily improve its position in relation to other creditors."). Accordingly, the PBGC's exercise of its statutory discretion not to pursue an action against the Pension Defendants is not inequitable conduct under Mobile Steel.

### D. There Is No Causal Connection Between the PGBC's Decision Not to Pursue Legal Action Against the Pension Defendants and the Alleged Injury to the Unsecured Creditors.

"Without a showing of inequitable conduct, the remaining two prongs of the [Mobile Steel] test are not applicable and the [c]ourt cannot subordinate the claim." Jacoway v. IRS (In re Graycarr, Inc.), 330 B.R. 741, 749 (Bankr. W.D. Ark. 2005). Here, the PBGC's conduct as alleged in the Complaint was not inequitable. The analysis is thus complete under the first prong.

18

But even if the alleged conduct were inequitable, the Complaint still would fail under the second prong of causality. The Liquidating Trustee states as fact that if the PBGC's claim for the Termination Liability is allowed as a general unsecured claim, the resulting dilution of the distribution to the other unsecured creditors will be "a direct and proximate result of the PBGC's failure to exercise its discretion to intervene in the litigation against the Pension Defendants." (Compl. ¶ 66, ECF No. 1.) But this statement is not a fact.

The fact is that no one knows what would have happened if the PBGC had either intervened or brought its own action against the Pension Defendants. The Liquidating Trustee assumes that the PBGC would have won and collected on its judgment. That assumption is pure conjecture, relying on the hypothetical success of a hypothetical action.

This foregone conclusion of certainty in an entirely speculative chain of events has been a hallmark of the Liquidating Trustee's pleadings from the beginning. In recommending dismissal of the Pension-Related Claim in the Second Amended Complaint against the Pension Defendants eight years ago, I wrote, "A court cannot determine liability for a claim that may or may not arise in the future and is contingent on a chain of events that have not even begun to occur." <u>Durango-Georgia Paper Co. v. H.G. Estate, LLC (In re Durango-Georgia Paper Co.)</u>, Ch. 11

AO 72A
(Rev. 8/82)

Case No. 02-21669, Adv. No. 04-02275 (Bankr. S.D. Ga. Sept. 24, 2007) (R. & R., ECF No. 90 at 19).

As then, so now, the Liquidating Trustee is traveling under what amounts to a hope and a prayer: the hope that the PBGC would either intervene or bring its own action and the prayer that the PBGC would be successful and collect. But the pleading standard under Iqbal and Twombly requires more than a hope and a prayer to survive a motion to dismiss.

If a more carefully drafted complaint might be able to state a claim, the plaintiff should be given the chance to amend. Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1213 (11th Cir. 2001). But if the defects in the complaint cannot be cured by amendment, the dismissal should be with prejudice. See id. Here, the defects are incurable.

### ORDER

IT IS THEREFORE ORDERED that the Complaint for Equitable Subordination of Claim is DISMISSED WITH PREJUDICE.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this ___ day of October, 2015.

20